Edwin Leo Coyle and Edith Coyle v. Commissioner.
Coyle v. Commissioner
Docket No. 109791.
United States Tax Court
1943 Tax Ct. Memo LEXIS 381; 1 T.C.M. (CCH) 844; T.C.M. (RIA) 43150; March 30, 1943
*381 Peter B. Nelson, Esq., 105 W. Adams St., Chicago, Ill., for the petitioners. Charles Munz, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding was brought to redetermine a deficiency in the income tax of the petitioners for the calendar year 1936 in the sum of $36,907.07. The determination resulted from the disallowance of the deduction of the sum of $74,700 as a loss on stock alleged to have become worthless in that year. The only issue is whether the shares of the common stock of the Atlantic-Pacific Gas and Oil Company, formerly the Atlantic-Pacific Oil Exploration Company, (hereinafter called "Parent Company"), became worthless in the taxable year 1936. Findings of Fact The petitioners are individuals, husband and wife, residing in Chicago, Illinois. They filed a joint return for the calendar year 1936, with the collector of internal revenue for the First Collection District of Illinois. The petitioner, Edwin Leo Coyle, during 1930 acquired 25,200 shares of the capital stock of the Parent Company at a cost of $72,540, and he still holds those shares. The Parent Company was incorporated in Delaware in 1929. Its corporate purpose *382 was to develop oil and gas on properties it owned or leased or upon which it had acquired government permits. It wholly owned two subsidiary companies, i.e., the Atlantic-Pacific Oil Company of Wyoming and the Atlantic-Pacific Oil Company of Montana, which were organized in 1930, and continued as operating companies until their dissolution in November 1940. On May 23, 1930, the Parent Company, as assignee of an option, agreed to purchase from the Dallas Dome Wyoming Oil Fields Company, certain oil lands in fee, and certain leaseholds of other oil lands, plants, operating equipment, etc., located in Wyoming. The expressed consideration was $500,000 payable $25,000 in cash and the balance in five notes, the last of which was to mature November 1932 and was secured by a purchase money mortgage. This contract was assigned to its Wyoming subsidiary. The purchaser and its subsidiary assignee defaulted in all subsequent payments of principal and interest. In 1934, the petitioners in their return deducted the cost of their shares in the Parent Company, here involved, as a loss on the ground that they were then worthless, but did not contest the determination of the Commissioner disallowing *383 the deduction. On December 14, 1935, the Parent Company and its Wyoming subsidiary entered into a new agreement with the Dallas Dome Oil Fields Company, under which the former conveyed and transferred back to the Dallas Dome Company all the property received under the purchase agreement of May 23, 1930. In addition to releasing and discharging the Parent Company and its Wyoming subsidiary from all liabilities, the Dallas Dome Company granted to the Wyoming Company the right to operate certain properties until December 1, 1936, under which grant one-fourth of the net proceeds of the operation were payable to Wyoming and three-fourths to the Dallas Dome Company, with the privilege on the part of the Wyoming Company to repurchase the properties on or before December 1, 1936, for the sum of $460,000. The Wyoming Company operated under this agreement and extensions thereof until its dissolution, November 20, 1940, when the Parent Company became the operating company and continued under extension agreements until March 20, 1942, when a new agreement was made extending the period until December 31, 1944. The Parent Company also had permits to explore or drill on about 90,000 acres of government *384 lands, which were never exploited to any extent. Prior to December 14, 1935, all these permits except those covering about 7,000 acres were forfeited or cancelled. Operations under the December 14, 1935 contract with the Dallas Dome Company yielded net profits as follows: 1936
$11,632.42
1937
10,132.88
1938
5,212.58
1939
7,070.98
1940
9,835.20
1941
5,344.52
For the year 1936 and subsequently the Parent Company and its two subsidiaries filed income tax returns showing receipt of income; filed capital stock returns and paid the tax on the value reported; paid annual franchise taxes in the State of Delaware where they were incorporated and the subsidiary companies paid operating license taxes in the respective states in which they were authorized to do business. The balance sheet of the Parent Company for the years 1936 to 1942, inclusive, showed assets in excess of liabilities and its consolidated profit and loss statement for the year ending December 31, 1936 showed a profit for that year of $628.29. The Parent Company sold no shares of its capital stock during the year 1936 or subsequently. No dividends nor any distributions were ever made to stockholders. Opinion
*385 The decision here rests solely on the determination of the fact as to whether the shares of the common stock of the Parent Company became worthless in the year 1936. Revenue Act of 1936, section 23 (e). Under the cited provision, a worthless stock loss can be deducted only in the year it becomes actually worthless. Has the petitioner established by reasonably convincing evidence that the loss was sustained in the year 1936? ; ; ; affd., . The petitioners contend that by December 14, 1935 the Parent Company had lost substantially all its property; had forfeited substantially all of its government permits; and that it was dependent upon the willingness of the Dallas Dome Company to extend the contract of December 14, 1935 beyond its expiration date of December 1, 1936. The passing of that control to Dallas Dome Company on the latter date is said to be the identifiable event upon the occurrence *386 of which the stock became worthless. This evidence is not convincing in view of the respondent's showing that the Parent Company and its subsidiaries continued to operate as going concerns; that there was substantial annual net income, and that the balance sheet for the year 1936 and subsequently showed assets in excess of liabilities. It is doubtless a fact that the assets of the Parent Company became gradually depleted. But the argument that the books of the company reflected many of these assets at values exceeding actual values is less than convincing on this record. And, in any event, mere shrinkage of value does not ordinarily form a basis for a deductible loss. ; . The Parent Company is still doing business with an avowed intent to continue. When those in charge of a company's operations, acting in good faith, believe they may work out of their business condition and realize profits as is shown here, it may not be said that the stock is worthless. . *387 Applying a practical test to the evidence presented, we are of the opinion that the petitioners have not established the fact that this stock became worthless in the year 1936. The determination of the respondent is sustained. Decision will be entered under Rule 50.